IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID LEE FALLIN,

          Plaintiff,

     v.

UNITED STATES OF AMERICA, ET AL.,

          Defendants.

Civil No. CV 04-694-MO

OPINION AND ORDER

**MOSMAN, J.,**

Plaintiff David Fallin, an American citizen, petitioned Defendant United States Citizenship & Immigration Services ("CIS" or "the Service") for immediate relative status for his immigrant wife, Lynda Fallin. On the basis of plaintiff's material misrepresentations during interviews, as well as a misunderstanding of some of plaintiff's evidence in support of his petition, CIS denied plaintiff's petition on the grounds that plaintiff's marriage was a sham entered into for the purpose of evading U.S. immigration laws. The Board of Immigration Appeals ("BIA") affirmed CIS' decision without opinion. Plaintiff subsequently filed a second petition for immediate relative status, which CIS approved. Plaintiff seeks a declaration invalidating CIS' "sham marriage" finding and denial of his I-130 petition as arbitrary and capricious. CIS counters that the approval of plaintiff's subsequent petition renders the instant action moot and deprives plaintiff of standing to pursue further changes to his wife's immigration status.

As set forth below, the court finds plaintiff retains standing to pursue his claims because the service's "sham marriage" determination imposes a legal disability on plaintiff that can be

PAGE 1 - OPINION AND ORDER

redressed by a favorable decision in this court. The court further finds CIS failed to provide plaintiff an opportunity to rebut its "sham marriage" finding in the manner provided for by law, and accordingly remands the decision on plaintiff's first I-130 petition to CIS for further consideration.

I.        Undisputed facts

Plaintiff David Fallin is married to Lynda Fallin ("Ms. Fallin"), a native of the United Kingdom. Lynda and David began communicating in September of 2000, while Lynda was living in Germany. The couple courted romantically for several months, and Lynda traveled to David's home in Oregon in February of 2001. Upon her return to Germany, Lynda ended her relationship with her then-husband. In March 2001, Lynda and David decided Lynda would return to the United States to continue their relationship. Lynda returned to Oregon on April 12, 2001. David proposed marriage, Lynda accepted, and the two were married on April 25, 2001. On June 11, 2001, plaintiff filed with CIS a form I-130 Petition for Alien Relative, along with supporting documents.

Prior to her marriage to plaintiff, Ms. Fallin met Ronald Laaja, a Canadian citizen and resident. In May of 2001, Ms. Fallin initiated an extramarital affair with Mr. Laaja. The affair continued for six months, during which time Ms. Fallin kept the relationship secret from plaintiff. In October of 2001, Ms. Fallin advised plaintiff that she was seeking a divorce. With the affair still secret, Ms. Fallin filed a petition for divorce and departed for Canada, where she lived with Mr. Laaja. While living with Mr. Laaja, Ms. Fallin opened a joint bank account with Mr. Laaja and joined a local gym.

In December of 2001, Ms. Fallin called plaintiff from Canada, informed him of at least

some aspects of her affair, and asked if plaintiff would have her back.  Plaintiff agreed, and on December 6, 2001, Ms. Fallin returned to plaintiff's residence in Oregon.  Although the plaintiff's I-130 petition was pending during these months, at no time did either of the Fallins inform CIS about Ms. Fallin's divorce petition or relocation to Canada.

On December 7, 2001, Ms. Fallin wrote Mr. Laaja an email in which she told him "nothing has changed[.]  I love you Ronnie and you know that."  She also informed Mr. Laaja that plaintiff was moving to Portland to accept employment there and offered: "so I guess I will move with him to Portland for the time being anyway."  On December 13, 2001, Ms. Fallin informed Mr. Laaja by email that "Things have not worked out there.  David was already making advances as you predicted and I could not cope with that."  The email closes "Love you to the end."  At some point during December 2001, Mr. Laaja began harassing both of the Fallins with obscene and threatening emails and phone calls.  Ms. Fallin responded to these threats in emails to Mr. Laaja on December 27 and 30 of 2001.  On December 29, 2001, Ms. Fallin disclosed to her husband the full details of her affair with Mr. Laaja.

On July 3, 2002, CIS interviewed Mr. and Ms. Fallin about the request for immediate relative classification.  In response to a question regarding whether she and Mr. Fallin had ever separated, legally or otherwise, Ms. Fallin stated: "Not really, no.  I needed to see my son and that's why I went to Canada."[1]  Asked about the nature of her relationship with Mr. Laaja, Ms. Fallin gave the following responses:

> Q: How would you assess the relationship between yourself and Mr. Laaja?
> A: Friends.  Sort of friends.

---

[1] Ms. Fallin did in fact see her son during a portion of her stay at Mr. Laaja's residence.

PAGE 3 - OPINION AND ORDER

> Q: Did you ever have a romantic or sexual relationship with Mr. Laaja?
> A: We had a flirt. That's like an older man admiring somebody. My son was there and I'm in love with my husband.
>
> Q: How far did this "flirt" extend?
> A: It's didn't.
>
> Q: Did you reciprocate any flirtation with Mr. Laaja while you were in Canada?
> A: No.
>
> Q: Have you communicated any more with Mr. Laaja upon returning to the United States?
> A: No, we had the general "I arrived well and everything was fine."

In her September 2004 deposition, Ms. Fallin admitted that she had been untruthful in her interview.

In his own interview, plaintiff similarly stated that he and Ms. Fallin had never separated, legally or otherwise. Asked whether he had known prior to the interview that Ms. Fallin stayed with Ronald and Eva Laaja when she was in Canada, plaintiff stated: "No, not really, I knew of them." Finally, when asked to assess the relationship between his wife and Mr. Laaja, plaintiff stated: "Just a friend. Friend of friend."

On April 29, 2003, CIS notified plaintiff by letter of their intent to deny immediate relative status to Ms. Fallin. The Notice of Intent to Deny indicated the Service found Mr. and Ms. Fallin's answers to the interview questions "troubling," and that the Service had found evidence which, taken prima facie, suggested Ms. Fallin intended to leave plaintiff and launch a new life with Mr. Laaja. CIS found "[p]articularly troubling . . . the apparent plans Ms. Fallin took to establish residency in Canada (a joint bank account statement with Mr. Laaja and membership in the Kelowna BC recreation services program)." The Notice stated this evidence

raised questions regarding whether the Fallins' marriage was a sham entered into for the purpose of evading U.S. immigration laws.

In his response to the Notice of Intent to Deny, plaintiff submitted numerous exhibits, including detailed statements from plaintiff, his wife, friends, colleagues, and co-workers attesting to the bonafide nature of the marriage. Plaintiff submitted documents demonstrating the couple's cohabitation and their joint financial condition. Ms. Fallin also submitted an affidavit on July 16, 2003, in which she admitted to her affair and admitted that she had informed plaintiff of the affair prior to the July 3, 2002 interview.

On October 2, 2003, CIS denied plaintiff's petition and refused to classify Ms. Fallin as an immediate relative. CIS determined Ms. Fallin's subsequent affidavit established that both of the Fallins had made misrepresentations under oath during the July 3, 2002 interview. In addition, CIS found that documents submitted by the Fallins, including a rental agreement, insurance forms and bank statements, suggested Mr. and Ms. Fallin were residing at separate abodes. CIS refused to consider the numerous affidavits submitted with plaintiff's response to the Notice of Intent to Deny on the grounds that they were not notarized. CIS also noted that plaintiff had failed to provide a complete English translation of proof of legal termination of Ms. Fallin's prior marriage in Germany, as required by 8 C.F.R. 103.2(b)(3). Absent a translation, CIS found insufficient evidence in the record to establish that Ms. Fallin was divorced at the time of her marriage to plaintiff. Altogether, considering only the evidence it found properly submitted, CIS found plaintiff had failed to carry his burden of establishing his eligibility for the benefits sought. On February 25, 2004, following an appeal, the Board of Immigration Appeals ("BIA") issued a final administrative decision, which affirmed and adopted

the October 2, 2003 denial of plaintiff's petition.

On May 24, 2004, plaintiff filed the instant action. Plaintiff's complaint asks the court to: (1) declare CIS' denial of plaintiff's I-130 petition arbitrary and capricious; (2) declare unlawful the BIA's summary affirmance of CIS' denial; and (3) accord immediate relative status to Lynda Fallin.

On October 27, 2004, during the pendency of this action, plaintiff filed a second Form I-130 with CIS. On November 2, 2004, CIS approved the second Form I-130, and Ms. Fallin is now classified as an immediate relative of plaintiff for immigration purposes. The decision indicates that "[t]he present circumstances demonstrate you have a bonafide marriage versus the circumstances and facts previously before CIS." The decision further indicates that the circumstances at the time of plaintiff's first petition "clearly indicated the marriage was not bonafide for immigration purposes," and that the government's denial of the first petition "included a clear and convincing articulation of the facts that existed at that time."

Plaintiff moved for summary judgment, arguing CIS' sham marriage finding and adverse credibility determinations were arbitrary and capricious. In response, CIS moved to dismiss plaintiff's complaint on the grounds that the grant of plaintiff's subsequent I-130 rendered this matter moot, and deprived plaintiff of standing to further challenge immigration decisions regarding Ms. Fallin.[2]

II.   Analysis

   A.   Jurisdiction

---

[2] Although CIS' motion is styled in the alternative as a cross-motion for summary judgment, the Service does not contest the facts offered by plaintiff or otherwise argue the merits of plaintiff's motion.

A U.S. citizen files an I-130 on his or her own behalf to petition the government to accord immediate relative status to an immigrant relative. If the I-130 is approved, the immigrant may then file an I-485 petition for adjustment of status on his or her own behalf. CIS argues plaintiff's complaint regarding the denial of his first I-130 petition is rendered moot by the subsequent grant of immediate relative status to Ms. Fallin. CIS contends plaintiff now seeks to litigate his wife's I-485 petition, which he lacks standing to do. The Service further argues prudence favors forgoing review of the I-130 decision at this time to allow the Ninth Circuit to consider the issue in the context of Ms. Fallin's I-485 petition.

Contrary to CIS' characterization, however, plaintiff does not seek to litigate his wife's I-485 petition. Rather, plaintiff challenges CIS' finding that he entered into a "sham marriage" with Ms. Fallin, as well as the adverse credibility determinations that underlay CIS' decision on the initial I-130. This is a non-moot claim, which plaintiff has standing to assert.

To have standing, a plaintiff must have: (a) suffered an injury in fact (b) traceable to the challenged action of the defendant (c) that can be redressed by a favorable court decision. *Lujan v. Defenders of Wildlife*, 605 U.S. 555, 561 (1992). Plaintiff's claim satisfies each of these requirements. Plaintiff has suffered an injury in fact because the sham marriage finding of which he complains is a legal disability under 8 U.S.C. § 1154(c). That section bars CIS from approving any subsequent petition submitted by a petitioner whom the Service has previously determined entered into a marriage for the purpose of evading immigration laws.[3] This injury is directly traceable to CIS' challenged actions, and would be redressed by a declaration abrogating

---

[3] This statutory provision also puts into question the validity of the Service's grant of plaintiff's subsequent I-130.

the Service's sham marriage determination. Accordingly, plaintiff has standing to assert this claim.

For essentially the same reasons, plaintiff's claim also is not moot. The test for mootness in a declaratory judgment case "is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005). A claim is moot only if there can be no effective relief, and the party asserting mootness bears a heavy burden in demonstrating this is so. *Northwest Environmental Defense Center v. Gordon*, 849 F.2d 1241, 1244-45 (9th Cir. 1988). In the instant action, CIS has not shown that its approval of plaintiff's second I-130 "completely and irrevocably eradicated the effects" of its earlier denial. *Chang v. United States*, 327 F.3d 911, 918 (9th Cir. 2003). Because the declaration plaintiff seeks would relieve him of a currently existing legal disability, plaintiff's claim is not moot.

Finally, prudence does not weigh in favor of deferring review of CIS' denial of plaintiff's I-130 petition. This case is unusual in that CIS' sham marriage determination imposes a present disability upon Ms. Fallin in her I-485 proceedings, yet she has no standing to contest that determination because it was made in the context of plaintiff's I-130 petition. While the Service argues Ms. Fallin will eventually have an opportunity for Ninth Circuit review of the I-130 denial, that review is at least two steps removed from the present circumstances – requiring, first, a denial of Ms. Fallin's I-485 petition and, second, the issuance of an order of removal by the Service. CIS does not identify any requirement that plaintiff refrain from challenging the denial of his I-130 petition simply because the Ninth Circuit may later have an opportunity to review

PAGE 8 - OPINION AND ORDER

that decision in the context of his wife's petition for adjustment of status. To the contrary, this court is the proper forum in which to review the denial of an I-130 petition under the APA. *Abboud v. INS*, 104 F.3d 843 (9th Cir. 1998) ("district courts have jurisdiction over final orders of the INS that do not involve deportation itself").

B. Merits

In visa petition proceedings, a petitioning United States citizen has the burden of proving by a preponderance of the evidence that the facts stated in his or her petition are true. *Matter of Soo Hoo*, 11 I&N Dec. 151, 152 (BIA 1965). "[W]here there is reason to doubt the validity of the marital relationship, [petitioner] must present evidence to show that it was not entered into for the primary purpose of evading the immigration laws." *Matter of Phillis*, 15 I&N Dec. 385, 386 (BIA 1975). In the instant action, CIS determined it had reason to doubt the validity of the Fallins' marriage based on the Fallins' misrepresentations and alleged documentary evidence that the Fallins were residing in separate abodes. CIS further determined that the evidence plaintiff offered to establish the bonafide nature of his marriage was insufficient to overcome that doubt.

This court's review of the Service's decision is governed by the Administrative Procedures Act ("APA"), 5 U.S.C. 706, which provides that "the reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. An action is arbitrary and capricious:

> if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view of the

product of agency expertise.[4]

Plaintiff argues CIS' sham marriage determination should be set aside based on the Service's: (1) improper adverse credibility determinations; (2) refusal to consider numerous unsworn statements; (3) misstatement of the nature of several documents and reliance on speculation and conjecture; and (4) impermissible assessment of the quality of the Fallin's marriage, rather than the couple's intent at the time of marriage.

        a.        Adverse credibility determinations

As plaintiff's own documents show, CIS' adverse credibility determinations were amply supported by the record. When Ms. Fallin was asked whether she had ever separated from plaintiff, legally or otherwise, she answered "Not really, no." In fact she had filed for divorce, moved in with Mr. Laaja in Canada, opened a joint bank account with Mr. Laaja, and obtained a membership to a local Canadian gym.

Asked about the nature of her relationship with Mr. Laaja, Ms. Fallin said they were "Friends. Sort of friends." Plaintiff argues this statement accurately characterized the relationship between the two at the time of the interview, but even this appears to be contradicted by both Fallins' subsequent assertions that Laaja had harassed and threatened them, and that they had changed their phone number three times to escape his harassment. Moreover, when asked specifically about whether she had shared a romantic or sexual relationship with Mr. Laaja, Ms. Fallin responded that they had had a "flirt." While plaintiff argues the term "flirt" could encompass their brief sexual relationship, Ms. Fallin's subsequent answers were unambiguously false. Asked specifically how far the flirt extended, she replied "It didn't." And asked whether

---

[4] *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

PAGE 10 - OPINION AND ORDER

she had reciprocated Mr. Laaja's flirtation, she responded "no."

Ms. Fallin further stated she had only one communication with Mr. Laaja after returning to the United States, in which she simply let him know she had arrived safely and all was well. In fact, the two had extended subsequent correspondence. Finally, in her September 2004 deposition, Ms. Fallin admitted she had been untruthful in her interview.

In light of the overwhelming evidence that Ms. Fallin lied about facts that were clearly material to the bonafide nature of her marriage, and Ms. Fallin's own admission that she had been untruthful in her interview, plaintiff's claim that CIS arbitrarily and capriciously determined Ms. Fallin was not credible is frivolous.

As for plaintiff, he similarly stated in his interview that he and Ms. Fallin had never separated, legally or otherwise. Asked to assess the relationship between his wife and Mr. Laaja, plaintiff stated: "Just a friend. Friend of friend." Finally, when asked whether he had known prior to the interview that Ms. Fallin had stayed with Ronald and Eva Laaja when she was in Canada, plaintiff stated: "No, not really, I knew of them." In fact, by her own testimony Ms. Fallin had told her husband all about the affair more than six months earlier. In light of these misrepresentations, CIS' determination that plaintiff was not credible is amply supported by the record.

    b. Refusal to consider numerous statements

In response to CIS' Notice of Intent to Deny, plaintiff submitted numerous affidavits from friends and associates of the Fallins for the purpose of rebutting the Service's determination that their marriage was a sham. CIS refused to consider the affidavits because they were not

notarized. However, the Service offers no authority for the proposition that such affidavits must be notarized, nor does it contest that it was error to have refused to consider them.

CIS also refused to consider the untranslated proof of legal termination of Ms. Fallin's prior marriage in Germany. Federal regulations require translations of any foreign language document. 8 C.F.R. 103.2(b). Accordingly, the Service's refusal to consider this document was proper.

        c.      Mischaracterization of documents and reliance on speculation and conjecture

In denying plaintiff's I-130 petition, CIS noted purported discrepancies among rental insurance papers, bank statements and other forms, on the basis of which the Service concluded the Fallins may have been residing at different residences. Plaintiff offers evidence showing the documents are not inconsistent and do not show the Fallins resided in separate abodes, and CIS now concedes that its determination to the contrary was incorrect.

        d.      Impermissible assessment of the quality of the Fallins' marriage

Plaintiff argues CIS based its denial of plaintiff's I-130 on a determination that Ms. Fallin's affair showed the couple's marriage was not bonafide, and argues the Service therefore impermissibly assessed the quality of the Fallins' marriage rather than their intent at the time of marriage. Plaintiff offers no evidence to support this theory. Rather, the evidence shows CIS denied plaintiff's petition on the basis of the Fallins' knowing misrepresentations of facts that were material to the genuineness of their marriage. Accordingly, there is no merit to this complaint.

III.    Conclusion

CIS' adverse credibility determinations were justified, and plaintiff's complaint that the

Service impermissibly judged the quality of the Fallin's marriage rather than their intent at the time of marriage lacks merit. Thus, it is entirely possible that had the Service reviewed and properly understood all of the evidence, it would have been justified in determining that the Fallins' marriage was a sham. However, it is undisputed that the Service refused to consider much of plaintiff's evidence to the contrary, and relied in part on a misunderstanding of other evidence in determining the marriage was a sham. In so doing, the Service deprived plaintiff of the opportunity to rebut this finding in the manner provided for by law. *See, e.g., Matter of Soriano*, 19 I&N Dec. 764, 766 (BIA 1988) (immediate relative status petitioner must be put on notice of deficiencies in petition and given reasonable opportunity to address them before petition is denied). CIS' October 2003 denial of plaintiff's initial I-130 petition was therefore invalid. Accordingly, the court remands this decision to CIS for new findings, taking into consideration the affidavits plaintiff submitted with that petition and a proper understanding of plaintiff's documentary evidence.

IT IS SO ORDERED.

DATED this 16th day of June, 2005.

/s/ Michael W. Mosman  
MICHAEL W. MOSMAN  
United States District Judge